[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13358
Non-Argument Calendar

_____

D. C. Docket No. 04-02566-CV-SLB-E

ABEL TRAVIESO,

Petitioner-Appellant,

versus

FEDERAL BUREAU OF PRISONS,
WARDEN,
Federal Correctional Institution,
Talladega, Alabama,
DEBRA ECHOLS,
Legal Technician,
Federal Correctional Institution,
Talladega, Alabama,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 16, 2007)**

Before ANDERSON, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Abel Travieso, a federal prisoner serving a 110-month sentence for drug-related crimes, filed the present petition for habeas corpus pursuant to 28 U.S.C. § 2241, seeking reinstatement of a 68-day credit for time over-served on an earlier sentence. The warden at Coleman Federal Correctional Complex ("FCC Coleman") originally granted the credit while Travieso was incarcerated there. However, when Travieso was transferred to the Talladega Federal Correctional Institution ("FCI Talladega"), authorities there revoked the credit, concluding that the Bureau of Prisons ("BOP") lacked authority to grant the credit at all. The district court denied his § 2241 petition. On appeal, Travieso argues that the district court erred in denying his § 2241 petition because the revocation of the 68-days' credit for time served violated his due process rights and principles of *res judicata* and collateral estoppel.

## Background

In 1993, Travieso was sentenced to 11 months' federal imprisonment for passport fraud and was released in 1994. In 1999, he pled guilty to drug-related crimes and was sentenced to 110-months' imprisonment. While incarcerated at FCC Coleman, authorities noticed that Travieso had over-served his passport fraud

2

sentence by 68 days. The warden at FCC Coleman awarded him a 68-day credit on his 110-month sentence to make up for the time he had over-served. Travieso additionally requested four-and-a-half months of good-time credit to compensate for the fact that his civil liberties had been violated, but this request was denied.

In September 2003, after being transferred to FCI Talladega, Travieso again raised the issue of the four-and-a-half months of credit he had requested. In response to his complaint, FCI Talladega employee Debra Echols advised Travieso that the 68-day credit had been improperly granted and would be removed. Travieso unsuccessfully sought to have the 68-day credit reinstated through available administrative remedies. He then filed this § 2241 petition when his administrative appeals were denied.

## Standard of Review

The availability of habeas relief under § 2241 presents a question of law that we review *de novo*. *Cook v. Wiley*, 208 F.3d 1314, 1317 (11th Cir. 2000)

## Discussion

While the BOP has the authority to grant credit for time served prior to the date of sentencing, the grant of a 68-days credit to Travieso was not authorized by the relevant statute. The applicable statute regarding credit for prior custody, 18 U.S.C. § 3585(b), provides:

3

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

    (1)    as a result of the offense for which the sentence was imposed; or

    (2)    as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b). In construing 18 U.S.C. § 3585(b), the Supreme Court has held that the Attorney General, through the Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing. *United States v. Wilson*, 503 U.S. 329, 333-35, 112 S. Ct. 1351, 1354-55, 117 L. Ed. 2d 593 (1992). However, according to the plain language of § 3585(b), Travieso never was eligible for a sentence credit based on the 68 days he over-served. First, the detention was not a result of his current offense, as he over-served a sentence for passport fraud and is currently incarcerated for drug crimes which occurred after his release from prison for passport fraud. Accordingly, Travieso does not qualify for relief under § 3585(b)(1). Moreover, the time Travieso over-served was not "a result of any other charge for which [he] was arrested after the commission of the offense for which the sentence was imposed" because Travieso was not arrested for passport fraud after committing the drug offenses for which he is currently serving a sentence. 18 U.S.C. § 3585(b)(2).

4

Thus, Travieso never should have been granted the 68-day credit.

Travieso has not shown that the BOP's actions in revoking the 68-day credit violated his due process rights. Prison regulations may create interests protected by the due process clause. *Wolff v. McDonnell*, 418 U.S. 539, 556-58, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935 (1974). The Supreme Court has held that due process protection for a government-created liberty interest is limited to those situations where deprivation of that interest limits freedom from restraint and "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). However, if there is no government-created right to the inmate's requested relief, then procedural due process is not implicated. *See Id.* at 487, 115 S. Ct. at 2302; *see also Francis v. Fox*, 838 F.2d 1147, 1149-50 (11th Cir. 1998) (holding that an Alabama law did not create a liberty interest in admission to work-release). In this case, it is undisputed that the credit was given to Travieso in error. As such, Travieso had no protected liberty interest in the credit because it was not authorized by statute, and he was not entitled to it. *Sandin*, 515 U.S. at 484-88, 115 S. Ct. at 2300-02. Moreover, the BOP's administrative remedy process provided Travieso with any required due process. *Id.* at 487, 115 S. Ct. at 2302.

Furthermore, the decision of the warden of FCC Coleman does not have preclusive effect under *res judicata* or collateral estoppel principles. Travieso argues that the decision to award a credit of 68 days was an administrative proceeding in which the warden acted in a judicial capacity, and is therefore entitled to preclusive effect under *res judicata* principles. The doctrine of *res judicata* may be applicable to administrative agencies, but only where an administrative agency "is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 421, 86 S. Ct. 1545, 1560, 162 L. Ed. 2d 642 (1966). If the formality of an administrative proceeding is sufficiently diminished, *res judicata* may not apply. *Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.,* 878 F.2d 1360, 1367-68 (11th Cir. 1989). "It follows that an agency proceeding which does not afford an opportunity to present live witnesses or to cross-examine opposing witnesses does not meet the test that the parties were afforded a full opportunity to litigate." *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1538 n.10 (11th Cir. 1985). In this case, the procedure for granting Travieso's credit never allowed for the presentation of live witnesses. Accordingly, *res judicata* does not apply. *Id.*

The doctrine of collateral estoppel is related to *res judicata*. To claim the

benefit of collateral estoppel, the party relying on the doctrine must show that (1) the issue at stake is the same as "the one involved in the prior proceeding, (2) the issue was actually litigated in the prior proceeding, (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the first action, and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). In determining when an issue has been "actually litigated," the *Pleming* Court cited with approval the Restatement's formulation that "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." *Id.* (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)). The question of whether Travieso should receive the 68-day credit was not litigated when it was initially granted because, rather than being raised by Travieso and submitted for determination, FCC Coleman prison authorities discovered on their own that Travieso had over-served his prior sentence and automatically applied the 68-day credit. Accordingly, collateral estoppel does not apply.

To the extent Travieso raises an equitable estoppel argument, he must prove four elements: "(1) words, conduct, or acquiescence that induced reliance; (2)

willfulness or negligence with regard to the acts, conduct, or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the government." *United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003). Affirmative misconduct requires more than governmental negligence or inaction. *Id.* Travieso cannot prove affirmative misconduct by the government. The BOP merely corrected an error made by the warden at FCC Coleman. Even if generally applicable to a government agency,[1] equitable estoppel does not apply in this case.

Thus, the district court correctly denied Travieso's § 2241 petition and we affirm.

**AFFIRMED.**

---

[1]We have questioned whether estoppel can even be applied against the government. *See Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1318 (11th Cir. 2006) ("[I]t is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be.").